**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1690-22

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

KWAKU DUA, a/k/a
KWAKU A. DUA,
KWAKU AGYEMANG-DUA,
KWAKU AGYEMANG-DUAN,

    Defendant-Appellant.

---

Argued December 18, 2024 – Decided March 5, 2025

Before Judges Marczyk and Torregrossa-O'Connor.

On appeal from the Superior Court of New Jersey, Bergen County, Indictment No. 20-02-0199.

Nadine Kronis, Assistant Deputy Public Defender, argued the cause for appellant (Jennifer Nicole Sellitti, Public Defender, attorney; Nadine Kronis, of counsel and on the briefs).

K. Charles Deutsch, Assistant Prosecutor, argued the cause for respondent (Mark Musella, Bergen County

Prosecutor, attorney; K. Charles Deutsch, of counsel
and on the brief).

PER CURIAM

Defendant Kwaku Dua appeals from the December 22, 2022 judgment of conviction for third- and fourth-degree aggravated assault respectively of two police officers. Following our review of the record and the applicable legal principles, we affirm in part, reverse in part, and remand for a new trial.

I.

In November 2019, defendant was dining at a buffet restaurant with his mother, wife, ex-partner, and children. Defendant's wife, Sara,[1] testified defendant asked a waitress for a new straw and lid after one of their children dropped theirs on the floor. She testified a waitress provided a new straw and lid but placed them on an unclean area of the table. When defendant asked for another straw, the waitress purportedly told him no. A verbal dispute ensued between defendant and employees of the restaurant at the counter near the vestibule at the entrance and exit to the restaurant. Defendant eventually called the police and told the dispatcher he was "being disrespected."

---

[1] Because defendant and his wife share the same last name, we refer to her by her first name. We intend no disrespect.

Officers Andres Enriquez and John Hwang of the Bergenfield Police Department were dispatched to the restaurant. Officer Enriquez testified that when he arrived, he heard people yelling from inside the restaurant and saw a crowd of people standing inside near the entrance. As he entered the restaurant through the vestibule, he saw numerous customers and employees screaming at each other. He described the environment inside the restaurant as "chaotic." Three videos of the events were played for the jury: Officer Enriquez's mobile video recording (MVR) from his police vehicle, the restaurant manager's cellphone video, and footage from the cameras inside the restaurant.

According to Officer Enriquez, defendant approached him and they began speaking near the front counter of the restaurant. Officer Enriquez indicated that he recognized defendant's voice from the 9-1-1 call. He described defendant's demeanor as "very angry," "agitated," and "upset" and that defendant told him that he had been disrespected by the restaurant staff and was willing to fight for his family.

Officer Enriquez testified he attempted to deescalate the situation. He kept trying to get defendant to lower his voice and communicate properly, but defendant continued "yelling really loudly." Defendant was "screaming obscenities" and "cursing" at the restaurant's employees and staff. Officer

3

Enriquez testified he advised defendant that he would be "placed under arrest for disorderly conduct" if he did not calm down. Sara also could not calm defendant and have him lower his voice.

Officer Hwang recounted that after being warned, defendant began screaming obscenities at Officer Enriquez. Around that time, Officer Hwang testified he walked toward defendant and Officer Enriquez from defendant's rear, seeking to de-escalate the situation. The officers planned to escort defendant outside because they wanted to speak with him in a quieter environment and did not want to continue disturbing the customers inside the restaurant. Officer Hwang indicated he attempted to "guide [defendant] outside of the restaurant" by pointing in that direction. Officer Enriquez stated Officer Hwang gestured with his left hand "to gain [defendant]'s attention" and to direct him outside to talk.

Both officers testified that before Officer Hwang could say anything, defendant punched him in the chest with a closed fist. Officer Enriquez stated Officer Hwang "stepped back from the recoil of the punch." Officer Enriquez noted that after defendant punched Officer Hwang, "[defendant] was going to be placed under arrest for disorderly conduct and agg[ravated] assault on a police officer." Likewise, Officer Hwang told the jury he "wanted to arrest

4

[defendant] at that point because . . . it's aggravated assault on a law enforcement officer."

As the officers attempted to grab defendant to arrest him, defendant walked backwards through the first set of doors in the vestibule, and turned to exit the last set of doors leading to the parking lot outside.[2] Officer Hwang stated that before defendant exited the restaurant, the officers again tried to grab him, at which point he shoved Officer Hwang "with two open palms," causing him to bounce off the vestibule door behind him.

Officer Enriquez testified defendant exited the restaurant flailing his arms away from the officers as they tried to arrest him. The officers eventually ended up outside the vestibule where the altercation continued onto the sidewalk. Unable to grab defendant's arms, Officer Enriquez recounted that he shoved defendant toward his patrol car parked along the curb in front of the restaurant's entrance. Officer Hwang testified defendant landed on the car's hood, with both officers landing on top of him, and then the three rolled into the parking lot between the two patrol cars. Defendant's wife, mother, and children also made

---

[2]  Patrons enter the restaurant from the parking lot through a front door. The front door connects to the vestibule, which has a second door leading into the restaurant itself.

A-1690-22

their way out to the sidewalk, along with customers and employees from the restaurant.

Officer Enriquez testified that while on the ground, they tried controlling defendant to place him under arrest, "giving him orders to stop resisting" and to "put [his] hands behind [his] back." Officer Hwang also stated he advised defendant he was under arrest. However, defendant would not give the officers his hands, kept trying to fight while lying on his back, and "swung at Officer Hwang" with a closed fist, which did not make contact. Officer Hwang stated defendant then used his hand to grab Officer Hwang's upper thigh area, "reaching in the area of [his] firearm." At that point, Officer Hwang stated he punched defendant in the face. The officers were then able to turn defendant over. Officer Enriquez stated Officer Hwang used his baton "not to [strike defendant], but just to separate his body from his hand." The officers were eventually able to gain control of defendant's arms and arrest him.

Officer Hwang testified that he had neck pain shortly after the incident and injured his middle finger from punching defendant. Officer Enriquez stated he suffered a fracture in his right wrist when he fell on the ground in the parking lot while rolling with defendant and trying to control his arms.

A-1690-22

Sara's testimony provided a different version of the events inside and outside the restaurant. She testified when Officer Hwang approached Officer Enriquez and defendant inside the restaurant, he grabbed defendant's wrists and told him he was under arrest. She did not observe defendant punch Officer Hwang in the stomach. She also stated defendant never threw a punch at any officer. After Officer Hwang grabbed defendant's arm, she stated defendant "kind of pulled away" and said "what do you mean I'm under arrest." Sara claims at that point Officer Hwang grabbed defendant's arm and started pushing him towards the front door, and defendant put his hands up in "a self-defense motion." Sara then gathered her children and ran outside after them.

Sara testified that while outside, one officer had his arm around defendant's neck,[3] and the other officer had his hand in defendant's face. She further stated that she observed Officer Hwang step back, draw his gun from his holster, point the gun at defendant, and say, "I'm going to kill [defendant]—I'm going to shoot him." Sara indicated that Officer Hwang then looked around and

---

[3] On cross-examination, Sara indicated that an officer grabbed her husband by the neck but did not place his arm around his neck.

A-1690-22

holstered his gun, at which point both officers continued struggling to get defendant onto the ground.[4]

Sara testified she was inches away from the altercation and told the officers "[y]ou're not telling [defendant] why he's arrested." She testified that while defendant did not throw a punch, she observed him "defend himself." Sara claimed that once defendant was on the ground, one officer had his knee on defendant's rib and "punched him twice" in the eye, and "[t]he other officer took out his [baton] and hit [defendant] twice." She indicated defendant was taken to the hospital several hours after the altercation where he learned he had an "orbital fracture" because of the punches to his eye.

In February 2020, defendant was indicted and charged with third-degree aggravated assault on Officer Hwang, N.J.S.A. 2C:12-1(b)(5)(a); third-degree resisting arrest, N.J.S.A. 2C:29-2(a); and third-degree aggravated assault on Officer Enriquez, N.J.S.A. 2C:12-1(b)(5)(a). Defendant was tried before a jury in October 2022. A jury convicted defendant of third-degree aggravated assault

---

[4] There is no video evidence depicting Officer Hwang drawing his weapon. However, the cameras only showed the interior portion of the restaurant and the perspective from the front of Officer Enriquez's police vehicle. There is no video of the officers struggling with defendant as they exit the vestibule until the officers and defendant come into contact with the hood of Officer Enriquez's vehicle. The restaurant manager did not begin filming until defendant and the officers were already in the parking lot between the police vehicles.

A-1690-22

on Officer Enriquez and the lesser-included offense of fourth-degree aggravated assault on Officer Hwang. He was acquitted of third-degree resisting arrest. In December 2022, the court imposed an aggregate sentence of three years of probation.

## II.

Defendant raises the following points on appeal:

POINT I

BOTH POLICE OFFICERS TESTIFIED THAT [DEFENDANT] COMMITTED THE CHARGED CRIME OF AGGRAVATED ASSAULT ON A POLICE OFFICER, DENYING [DEFENDANT] A FAIR TRIAL AND REQUIRING REVERSAL. (NOT RAISED BELOW)

POINT II

THE TRIAL COURT'S FAILURE TO INSTRUCT THE JURY ON SELF-DEFENSE DEPRIVED [DEFENDANT] OF A FAIR TRIAL. (NOT RAISED BELOW)

POINT III

THE TRIAL COURT'S FAILURE TO ADEQUATELY INSTRUCT THE JURY ON CAUSATION WAS PLAIN ERROR WHERE THERE WAS A FACTUAL DISPUTE OVER WHETHER [DEFENDANT] ACTUALLY CAUSED OF[FICER] ENRIQUEZ'S WRIST FRACTURE. (NOT RAISED BELOW)

9

## POINT IV

### THE CUMULATIVE IMPACT OF THE ERRORS DENIED [DEFENDANT] A FAIR TRIAL (NOT RAISED BELOW)

If a defendant, as here, does not object or otherwise preserve an issue for appeal at trial, courts review the issue for plain error. R. 2:10-2; State v. Singh, 245 N.J. 1, 13 (2021). Courts must disregard any unchallenged errors or omissions unless they are "clearly capable of producing an unjust result." R. 2:10-2. Plain error is a high bar and constitutes "error not properly preserved for appeal but of a magnitude dictating appellate consideration." State v. Bueso, 225 N.J. 193, 202 (2016) (quoting Pressler & Verniero, Current N.J. Court Rules, cmt. 2.1 on R. 2:10-2 (2016)).

In reviewing issues for plain error, "[t]he mere possibility of an unjust result is not enough." State v. Funderburg, 225 N.J. 66, 79 (2016). "In the context of a jury trial, the possibility must be 'sufficient to raise a reasonable doubt as to whether the error led the jury to a result it otherwise might not have reached.'" State v. G.E.P., 243 N.J. 362, 389-90 (2020) (quoting State v. Jordan, 147 N.J. 409, 422 (1997)). Thus, plain error requires a determination of: "(1) whether there was error; and (2) whether that error was 'clearly capable of producing an unjust result,' R. 2:10-2; that is, whether there is 'a reasonable

10

doubt . . . as to whether the error led the jury to a result it otherwise might not have reached.'" State v. Dunbrack, 245 N.J. 531, 544 (2021) (quoting Funderburg, 225 N.J. at 79).

A.

Defendant argues, for the first time on appeal, that Officers Enriquez and Hwang improperly addressed the ultimate issue at trial and opined on defendant's guilt because they testified defendant committed aggravated assault on a police officer. Defendant contends the testimony was clearly capable of producing an unjust result and thus constituted plain error. The State, in turn, asserts the officers never testified on the ultimate issue, but even if they did, it would not have produced an unjust result because the State presented additional evidence that enabled the jury to draw its own conclusion about defendant's guilt.

Under N.J.R.E. 701, "[i]f a witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences may be admitted if it: (a) is rationally based on the witness' perception; and (b) will assist in understanding the witness' testimony or determining a fact in issue." Police officers may "testify as lay witnesses, based on their personal observations and their long experience in areas where expert testimony might otherwise be

deemed necessary." State v. LaBrutto, 114 N.J. 187, 198 (1989). Specifically, law enforcement is permitted to give "an ordinary fact-based recitation" of "what he or she perceived through one or more of the senses," but such testimony does not include an opinion or convey information about "what the officer 'believed,' 'thought[,]' or 'suspected.'" State v. McLean, 205 N.J. 438, 460 (2011).

Consequently, an officer may not "give an opinion on matters that were not beyond the understanding of the jury," id. at 463, or "opine directly on a defendant's guilt in a criminal case." State v. Trinidad, 241 N.J. 425, 445 (2020). It is the jury's "traditional function of sorting through all of the evidence and using their common sense to make simple logical deductions" in deciding the ultimate issue in a case. State v. Cain, 224 N.J. 410, 427 (2016); State v. Simms, 224 N.J. 393, 405 (2016). Hence, "ultimate-issue testimony" usurps the jury's role and can produce an unjust result under the plain error standard. Simms, 224 N.J. at 407.

Moreover, our courts "go to extraordinary lengths in ordinary criminal cases to . . . avoid inadvertently encouraging a jury prematurely to think of a defendant as guilty." State v. Hightower, 120 N.J. 378, 427 (1990) (Handler, J., concurring in part and dissenting in part). Accordingly, courts have not permitted police officers to give a factual recitation and then subsequently

12

testify about their beliefs because doing so would "transform[] testimony about an individual's observation[s] . . . into an opportunity for police officers to offer opinions on defendants' guilt." McLean, 205 N.J. at 461.

For example, our Supreme Court views ultimate-issue testimony on a defendant's state of mind as a "quasi-pronouncement of guilt that intrudes on the exclusive domain of the jury as factfinder." Cain, 224 N.J. at 427. Thus, in Cain, after explaining to the jury the significance of the quantity and packaging of the drugs, scale, and cutting agents found in a defendant's home, the expert could not then opine on the defendant's intent to distribute those drugs because the jury already had the necessary information to draw its own conclusions on that ultimate issue of fact. Id. at 432.

Similarly, a prosecutor may not pose a hypothetical question that causes an expert to inappropriately opine on a defendant's intent to distribute drugs because the opinion would be "tantamount to a legal conclusion, resulting in a veritable pronouncement of guilt on the two possession crimes for which [the] defendant was charged." State v. Reeds, 197 N.J. 280, 295, 297 (2009). Likewise, testimony that "mimick[s] the statutory elements of the offense" is not necessary to assist the jury and thus improper. Simms, 224 N.J. at 396.

In contrast, impermissible lay opinion about the ultimate issue of a defendant's guilt will not always constitute plain error. Trinidad, 241 N.J. at 446-47. In Trinidad, the defendant was a former police officer tried for, among other things, falsifying public records and official misconduct stemming from a traffic stop gone awry. Id. at 433. An internal affairs investigator testified that based on reviewing the dashcam footage of the defendant's patrol car, the defendant's actions "appeared to have been criminal." Id. at 441-42. While the trial judge should have instructed the jury to disregard that testimony, the Court did not find its admission constituted plain error because the jury could compare the dashcam footage of the defendant's egregious misconduct with the defendant's police report to conclude that the report had been falsified. Id. at 446-48. In another case, the Court found an officer's testimony that "[the defendant] was the person responsible for the murder" to be harmless error in light of the strength of the State's case, the length of trial, and number of witnesses called. Hightower, 120 N.J. at 410.

Defendant argues that Officers Hwang and Enriquez opined on defendant's guilt throughout the trial. To convict defendant of third-degree aggravated assault on a police officer, the State must prove:

1. that the defendant purposely attempted to cause or purposely, knowingly or recklessly caused bodily injury [to the victim];

2. that [the victim] was a law-enforcement officer; and

3[]. that the defendant knew that [the victim] was a law-enforcement officer[] acting in the performance of [their] duties or while in uniform or exhibiting evidence of [their] authority[.]

[Model Jury Charges (Criminal), "Aggravated Assault - Upon Law Enforcement Officer (Attempting to Cause or Purposely, Knowing or Recklessly Causing Bodily Injury) (N.J.S.A. 2C:12-1b(5)(a), (b), (c), (d), (e), (f), (g))" at 1 (rev. Dec. 3, 2001) [hereinafter Model Jury Charges for Aggravated Assault Upon an Officer].]

Defendant contends portions of the officers' testimony were "tantamount to a legal conclusion" and openly pronounced defendant guilty of aggravated assault on a police officer.

Defendant first cites three statements from Officer Enriquez's testimony: (1) after stepping back from the recoil of defendant's punch, Officer Hwang "attempted to . . . grab [defendant] to arrest him for agg[ravated] assault on a police officer"; (2) "At that point, [defendant] was going to be placed under arrest for . . . agg[ravated] assault on a police officer"; and (3) defendant was placed under arrest for "agg[ravated] assault, and resisting arrest."

Contrary to defendant's contentions, none of these statements constitutes an impermissible opinion on the ultimate issue of fact.  In the three statements, Officer Enriquez merely recited that the officers were attempting to place defendant under arrest for aggravated assault because he punched Officer Hwang.  Notably, Officer Enriquez explained the reasons for his actions following his firsthand experience of the incident.  Thus, Officer Enriquez testified about the events he perceived rather than about what he believed, thought, or suspected.  McLean, 205 N.J. at 460.  He did not offer a contemporaneous opinion at trial regarding defendant's guilt.  He did not opine on defendant's state of mind or that defendant acted purposefully, knowingly, or recklessly.  Therefore, contrary to defendant's assertion, a statement that defendant was placed under arrest for aggravated assault is not a declaration that "[defendant] committed an aggravated assault on [Officer] Hwang."

Officer Hwang testified that after defendant punched him, he "wanted to arrest [defendant] . . . because . . . it's aggravated assault on a law enforcement officer."  Officer Hwang's statement could be construed as his opinion at the time of the arrest as to the ultimate issue before the jury.  That is, that defendant's conduct constituted aggravated assault on a law enforcement officer—the crime for which defendant was charged.  Although the testimony should have been

16

excluded, the mere admission of this fleeting statement is not plain error denying defendant's right to a fair trial.

In line with the reasoning in Trinidad, the jury was presented with a plethora of evidence upon which it could find defendant guilty of aggravated assault. Specifically, the jury saw videos of the altercation inside and outside the restaurant, listened to Officer Enriquez's MVR audio, and heard both officers testify that defendant punched Officer Hwang in the chest. That is, Officer Hwang's single statement was not central to the State's case. The jury also considered a vastly different version of events from Sara. Officer Hwang's stray comment does not rise to the level of a plain error under the totality of the circumstances in this matter. We are satisfied the limited testimony would not have "led the jury to a result it otherwise might not have reached." Trinidad, 241 N.J. at 447 (quoting State v. Macon, 57 N.J. 325, 336 (1971)); see, e.g., Hightower, 120 N.J. at 410 (holding an officer's testimony that the defendant "was the person responsible for the murder" was harmless error because of "the strength of the State's case, the length of the trial, and the number of witnesses called").

Notably, the jury acquitted defendant of third-degree aggravated assault on Officer Hwang, instead convicting him of the lesser offense of fourth-degree

aggravated assault on a police officer, which requires an attempt to cause bodily injury as opposed to purposely, knowingly, or recklessly causing such an injury.[5] Hence, Officer Hwang's single statement that "it's aggravated assault on a law enforcement officer" was not dispositive of the State proving third-degree aggravated assault, because even with that testimony, the jury only found defendant guilty of the lesser-included crime. Accordingly, even if the testimony was improperly admitted, the error did not affect the outcome of the case and therefore was not "clearly capable of producing an unjust result." R. 2:10-2.

Nevertheless, because we are reversing and remanding for the issues discussed below regarding the court's failure to provide a self-defense charge, on remand the State should avoid questions that would elicit opinion testimony regarding defendant's guilt that would usurp the jury's role.

B.

Defendant contends the court was required to instruct the jury on two different self-defense charges because there was sufficient evidence in the record to show defendant used force in self-defense during his altercation with

---

[5] Fourth-degree aggravated assault requires a person to attempt to cause bodily injury to a police officer acting in performance of their duties while in uniform or exhibiting evidence of authority. N.J.S.A. 2C:12-1(b)(5)(a).

the officers. Defendant reasons that if the judge gave instructions on self-defense, the jury could have found the defense to be a complete justification to all charges. Defendant disputes that he was the initial aggressor based on his wife's testimony. Defendant principally relies on State v. Mulvihill[6] and State v. Montague[7] in asserting the court erred in failing to give the appropriate self-defense charges.

The State contends defendant cannot claim self-defense in the context of an arrest by police officers when defendant was the initial aggressor and knew submitting to the officers would terminate their use of force. It asserts that because defendant was the initial aggressor, he cannot raise self-defense.

"An essential ingredient of a fair trial is that a jury receive adequate and understandable instructions." State v. McKinney, 223 N.J. 475, 495 (2015) (quoting State v. Afanador, 151 N.J. 41, 54 (1997)). "At the heart of the guarantee of a fair trial is the 'jury's impartial deliberations upon the guilt of a criminal defendant based solely upon the evidence in accordance with proper and adequate instructions . . . .'" State v. Collier, 90 N.J. 117, 122 (1982) (quoting State v. Simon, 79 N.J. 191, 206 (1979)).

---

[6]  57 N.J. 151 (1970).

[7]  55 N.J. 387 (1970).

The trial court must give "a comprehensible explanation of the questions that the jury must determine, including the law of the case applicable to the facts that the jury may find." Thus, the court has an "independent duty . . . to ensure that the jurors receive accurate instructions on the law as it pertains to the facts and issues of each case, irrespective of the particular language suggested by either party."

[State v. Baum, 224 N.J. 147, 159 (2016) (citations omitted) (first quoting State v. Green, 86 N.J. 281, 287-88 (1981); then quoting State v. Reddish, 181 N.J. 553, 613 (2004)).]

"Jury instructions have been described as 'a road map to guide the jury[;] without an appropriate charge, a jury can take a wrong turn in its deliberations.'" McKinney, 223 N.J. at 495 (alteration in original) (quoting State v. Martin, 119 N.J. 2, 15 (1990)). "Because proper jury instructions are essential to a fair trial, 'erroneous instructions on material points are presumed to' possess the capacity to unfairly prejudice the defendant." Ibid. (quoting State v. Bunch, 180 N.J. 534, 541-42 (2004)); see also State v. Jordan, 147 N.J. 409, 422 (1997) (finding that some jury instructions are "so crucial to the jury's deliberations on the guilt of a criminal defendant that errors in those instructions are presumed to be reversible"). "Therefore, '[e]rroneous instructions are poor candidates for rehabilitation as harmless, and are ordinarily presumed to be reversible error.'" McKinney, 223 N.J. at 495-96 (alteration in original) (quoting Afanador, 151

20

N.J. at 54); see also Baum, 224 N.J. at 159 (erroneous instructions on material points are presumed to possess the capacity to unfairly prejudice the defendant). The plain error analysis of an erroneous jury charge mandates that the reviewing court examine the charge as a whole to determine its overall effect. McKinney, 223 N.J. at 494.

"The standard for assessing the soundness of a jury instruction is 'how and in what sense, under the evidence before them, and the circumstances of the trial, would ordinary . . . jurors understand the instructions as a whole.'" State v. Savage, 172 N.J. 374, 387 (2002) (quoting Crego v. Carp, 295 N.J. Super. 565, 573 (App. Div. 1996)).

A law enforcement officer may use force when making an arrest if they "reasonably believe[] that such force is immediately necessary to effect a lawful arrest." N.J.S.A. 2C:3-7(a). "If the citizen resists the arrest, the officer is not only justified in but has the duty of employing such force as is reasonably necessary to overcome the resistance and accomplish the arrest." Mulvihill, 57 N.J. at 156. "Accordingly, in our State when an officer makes an arrest, legal or illegal, it is the duty of the citizen to submit and, in the event the seizure is illegal, to seek recourse in the courts for the invasion of his right of freedom." Id. at 155-56.

However, our law also authorizes a civilian's use of force in self-protection while being placed under arrest in certain limited circumstances. "If, in effectuating the arrest or the temporary detention, the officer employs excessive and unnecessary force, the citizen may respond or counter with the use of reasonable force to protect himself, and if in so doing the officer is injured no criminal offense has been committed." Id. at 156; see also N.J.S.A. 2C:3-4(b)(1)(a) (although a person may not use force to resist arrest simply because the arrest is unlawful, he or she may use force if the officer employs unlawful force to effect such arrest).

The citizen cannot use greater force in protecting himself from the officer's unlawful force than appears necessary under the circumstances, and he loses his privilege of self-defense if he knows that if he submits to the officer, the officer's excessive use of force will cease. Mulvihill, 57 N.J. at 157. The rule is designed to protect a person's bodily integrity and health as "the law recognizes that liberty can be restored through legal processes but life or limb cannot be repaired in a courtroom." Id. at 156.

A self-defense charge is required when "any evidence raising the issue of self-defense is adduced, either in the State's or the defendant's case." State v. Kelly, 97 N.J. 178, 200 (1984). If such evidence is present, "then the jury must

22

be instructed that the State is required to prove beyond a reasonable doubt that the self-defense claim does not accord with the facts; [and] acquittal is required if there remains a reasonable doubt whether the defendant acted in self-defense." Ibid.; see also State v. Gentry, 439 N.J. Super. 57, 63 (App. Div. 2015) (holding that a self-defense instruction is required, even when not requested, where the evidence indicates a rational basis for instructing it).

"[B]ecause self-defense must be charged if the evidence, viewed most favorably to the defendant, would support that justification, we focus on 'the evidence that provides a rational basis for a self-defense charge.'" Gentry, 439 N.J. Super. at 63 (quoting State v. Rodriguez, 195 N.J. 165, 170 (2008)). "Where there is sufficient evidence to warrant a self-defense charge, failure to instruct the jury . . . constitutes plain error." Id. at 67.

Here, defendant asserts the jury should have been instructed on two different self-defense charges, both of which are based on N.J.S.A. 2C:3-4. Under the first charge, a defendant may use nondeadly force if they reasonably believe the use of force was necessary to defend against an unlawful force. Model Jury Charges (Criminal), "Justification – Self Defense in Self Protection (N.J.S.A. 2C:3-4)" at 4 (Rev. Nov. 13, 2023) [hereinafter General Self Defense].

The right of defendant against the use of unlawful force exists "[w]hen a person is in imminent danger of bodily harm." Id. at 1.

A different charge on self-defense applies when a defendant claims they had the right to resist an arrest because the arresting officer used unlawful and excessive force. Model Jury Charges (Criminal), "Justification - Self Defense Resisting Arrest (N.J.S.A. 2C:3-4)" at 1 (Approved Oct. 17, 1988) [hereinafter Resisting Arrest Self Defense]. It provides, "[a]n officer may use, to effect an arrest, the amount of force necessary to accomplish the arrest." Ibid. As such, the jury "must determine whether the officer used substantially more force than was necessary to effect the arrest of the defendant." Ibid. The charge, in part, provides:

> A person may use force to protect himself . . . if four conditions exist:
>
> 1. The person reasonably believes that he . . . is protecting himself . . . against unlawful force.
>
> 2. The person reasonably believes that he . . . has the right to use force.
>
> 3. The person reasonably believes that the use of force is immediately necessary.

> 4. The person reasonably believes that he . . . is using the force to protect himself . . . .[8]

[Ibid.]

Defendant relies upon Mulvihill and Montague for the proposition that courts must give the jury tailored instructions on both self-defense charges when there is sufficient evidence of self-defense at trial and a factual dispute regarding whether a defendant was under arrest at the time of the altercation with law enforcement. In State v. Montague, the Court found the trial judge erred in instructing the jury that the defendant could not claim he acted in defense of another. 55 N.J. at 403-04. There, the defendant testified that during a traffic stop, he heard a uniformed officer tell his niece to stop blowing the horn, saw his niece leave the car, and then heard her yell a racial slur at the officers. Id. at 391-92. The defendant stated the officer said, "I'll smack you," to which his

---

[8] The charge further provides:

> A person may not, however, resist any arrest he . . . knows is being made by an officer in the performance of the officer's duties, whether the arrest is legal or illegal, unless that officer uses unlawful force. Your first task, therefore, is to determine whether the officer used unlawful force to try to arrest the defendant.

[Ibid.]

niece responded, "I'll smack you back," and the defendant then saw the officer beating his niece. Ibid. Four witnesses corroborated the defendant's testimony. Id. at 391-93. Thus, the Court found "there was something more" than an intervenor's bare assertion that the officers committed an unlawful arrest. Id. at 405-06. "[T]here was enough affirmative testimony favorable to the defendant from which a jury could properly have found that the circumstances reasonably indicated to the defendant" that the officer was not trying to arrest his niece but rather "administering a beating." Ibid.

Furthermore, in Mulvihill, the Court held that a defendant was entitled to submit his self-defense claim to a jury. 57 N.J. at 159. There, an officer approached the defendant suspecting he violated an ordinance against drinking alcohol in public. Id. at 154-55. When the defendant failed to disclose what he was drinking and refused to allow the officer to smell his breath, the officer "shook him 'back and forth' by the shoulders" and said[,] "I should arrest you, you punk." Ibid. The defendant tried to pull away, and an altercation ensued on the ground, during which the officer struck the defendant on the head with his gun causing lacerations. Id. at 155. The defendant grabbed the officer's hand to point the gun away and avoid being shot, while the officer tried to direct it toward him saying, "Stop or I'll shoot." Ibid.

Given the parties disputed whether the defendant was under arrest prior to the altercation, the Court provided two bases for allowing a self-defense charge. Id. at 158-59. First, if a jury found the officer's words or conduct informed the defendant that he was under arrest, it would then need to determine whether the officer's use of force was reasonable or excessive, implicating the defendant's ability to defend himself. Id. at 158. Alternatively, if the jury found the defendant was not under arrest when the altercation occurred, the defendant may have been entitled to defend himself because the altercation could have "t[aken] on the character of combat between two private individuals." Id. at 159.

Here, defendant argues the jury should have been instructed on both self-defense charges because there was a factual dispute regarding whether defendant knew he was under arrest when the altercation occurred. First, he asserts the court was required to instruct the jury that if it found defendant was not under arrest or did not know he was being arrested, the jury should utilize the General Self Defense charge for altercations between private individuals. Alternatively, if the jury found defendant was under arrest or knew he was being arrested, the jury should apply the Resisting Arrest Self Defense charge to determine whether defendant used reasonable force in response to the officers' alleged excessive force.

27

Viewing the evidence most favorably to defendant, Sara testified defendant never threw a punch at the officers. She stated Officer Hwang grabbed defendant's arm and forcefully pushed him toward the door, and defendant put his hands up in a "self-defense motion." Although Sara testified the officers told defendant he was under arrest in the restaurant after grabbing him and pushing him out of the vestibule, both officers testified they did not intend to arrest defendant until defendant struck Officer Hwang. The court should have given the general self-defense charge because the jury could have concluded that defendant never struck either officer and that he did not know he was under arrest in the restaurant, and he was holding his hands up in a "self-defense motion."

We similarly conclude the resisting arrest self-defense charge should have been given regarding the interaction between defendant and the officers outside the restaurant. Again, Sara's testimony raises an issue that must be resolved by the jury on the issue of self-defense. She claims Officer Hwang drew his gun and allegedly stated he was going to shoot defendant. She further testified one of the officers punched defendant in the face two times, and the other hit him twice with his baton. Meanwhile, she recounted defendant never punched the officers and was trying to defend himself. Accordingly, a jury could have

concluded defendant knew he was under arrest and acted in self-defense to counter the officers' alleged use of unlawful force.

Accordingly, the jury should have received both self-defense charges. Absent an appropriate self-defense instruction, the jury was effectively prevented from considering whether the officers employed unlawful force, and whether defendant reasonably believed it was necessary to use force to protect himself.

To be sure, Sara's testimony is strongly disputed by the State. The State argues Sara's testimony was "blatantly false," she contradicted herself at trial, and the video evidence conflicted with her testimony. Nevertheless, her testimony creates a fact issue thereby providing a rational basis for both self-defense charges. The failure to instruct the jury that self-defense is a justification for resisting arrest where the facts reasonably could support that defense constitutes plain error. Simms, 369 N.J. Super. at 473. On remand, the trial court should provide both instructions. We are mindful defendant was acquitted of resisting arrest. Accordingly, we leave it to the court's sound discretion to modify the resisting arrest self-defense charge in the context of the remaining aggravated assault charges.

29

Considering our ruling, we need not reach defendant's argument that the court erred in failing to adequately instruct the jury on causation regarding Officer Enriquez's wrist injury. Defendant may raise this issue on remand for the trial court to address in the first instance.

We vacate the convictions and remand for a new trial. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

*M.C. Harley*

Clerk of the Appellate Division

A-1690-22